**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**Gregory Smith**
238 Adams Street
Nelsonville, Ohio 45764,

        **Plaintiff**,

v.

**City of Nelsonville, Ohio**
211 Lake Hope Drive
Nelsonville, Ohio 45764

    And

**Tony Dunfee**, as President of
Nelsonville City Council
211 Lake Hope Drive
Nelsonville, Ohio 45764
In his official and personal capacity

    And

**Elizabeth Jones**, as a member of
Nelsonville City Council
211 Lake Hope Drive
Nelsonville, Ohio 45764
In her official and personal capacity

    And

**Justin Booth**, as a member of
Nelsonville City Council
211 Lake Hope Drive
Nelsonville, Ohio 45764
In his official and personal capacity

    And

**Carla Grant**, as a member of
Nelsonville City Council
211 Lake Hope Drive
Nelsonville, Ohio 45764
In her official and personal capacity

**Case Number:**

**Judge:**

And

**Dan Sherman**, as a member of
Nelsonville City Council
211 Lake Hope Drive
Nelsonville, Ohio 45764
In his official and personal capacity

And

**Cory Taylor**, as a member of
Nelsonville City Council
211 Lake Hope Drive
Nelsonville, Ohio 45764
In his official and personal capacity

And

**Alex Mount**
City of Nelsonville, Ohio
211 Lake Hope Drive
Nelsonville, Ohio 45764
In his official and personal capacity

And

**Chief of Police**
**Scott Fitch**
City of Nelsonville, Ohio
211 Lake Hope Drive
Nelsonville, Ohio 45764
In his official and personal capacity

And

**John Doe Police Officer #1**
City of Nelsonville, Ohio
211 Lake Hope Drive
Nelsonville, Ohio 45764
In his official and personal capacity

**JURY DEMAND ENDORSED HEREON**

**Defendants**.

**VERIFIED COMPLAINT**

Gregory Smith, Plaintiff, files this Complaint, hereby stating and alleging the following:

1.     Jurisdiction is proper in the United States District Court for the Southern District of Ohio pursuant to 28 U.S.C. §1331.

2.     Jurisdiction for pendent state law claims is proper in the United States District Court for the Southern District of Ohio pursuant to 28 U.S.C. §1367.

3.     Venue is proper in this District pursuant to 28 U.S. Code §1391. All acts complained of herein occurred within the State of Ohio, Federal Southern District of Ohio, Eastern Division.

4.     This Court has jurisdiction over all the parties for actions brought pursuant to the First and Fourteenth Amendments and 42 U.S.C. §1983.

5.     Plaintiff, Gregory Smith (Hereinafter Plaintiff), at all relevant times herein, is a lawfully elected Council member of the City of Nelsonville, county of Athens, Ohio.

6.     Defendant City of Nelsonville, (Hereinafter Defendant City) Ohio is a charter municipality of the State of Ohio that governs legislatively by lawfully elected Council members.

7.     Defendant Council members, (Hereinafter Defendants) are lawfully elected, or appointed to elected office, who govern the Defendant City by enacting legislation as authorized by law by the State of Ohio.

8.   Defendants act under color of law legislatively both individually and in their official capacity. Defendants acted under color of law legislatively both individually and in their official capacity at all times relevant herein.

9.   Defendant Alex Mount is a police officer with the Defendant City of Nelsonville. At all times relevant herein Defendant Mount acted under color of law.

10.  John Doe Police Officer #1, whose name is unknown but discoverable, is a police officer with the Defendant City of Nelsonville. At all times relevant herein Defendant John Doe Police Officer #1 acted under color of law.

11.  Scott Fitch is a police officer and Chief of Police with the Defendant City of Nelsonville. At all times relevant herein Defendant Scott Fitch acted under color of law.

12.  In 2018 the Plaintiff had been investigated by the Athens County Board of Elections to determine his status as a qualified person for the office of Council person in Nelsonville, Ohio.

13.  In 2018 the the Athens County Board of Elections determined that that Plaintiff was properly qualified to sit as a Council member in Nelsonville, Ohio.

14.  Defendants have variously both individually and jointly maintained a history of animus toward the Plaintiff during their respective times on City Council by taking adverse action against the Plaintiff, including two removals from office.

15.  On January 26, 2021 Defendant Jones introduced a resolution to censure Plaintiff and Defendant Sherman proposed to Council that Plaintiff again be investigated for his qualifications as a Council member. The roll call of the Defendants purportedly confirmed the censure and a hearing to be had on Plaintiff's residency qualifications.

16.    On February 5, 2021, Plaintiff was served with a notice formally charging him with violations of the City Charter, most notably alleging he was not a continuous resident of the City of Nelsonville, and setting a hearing for 2-19-2021. [Exhibit 1]

17.    The City Charter at §4.02 sets forth the requirements for the office of a Council member for the Defendant City. [Exhibit 2]

18.    The City Charter at §4.02 requires the removal from office of Council member even if the person is a qualified elector and was properly elected unless that Council member "shall continue to be a resident and qualified elector of the City throughout his term of office…"[Exhibit 2 at §4.02].

19.    The City Charter does not define the phrase "continue to be a resident".

20.    The City Charter §4.02 violates due process because (1) fails to inform ordinary people what conduct is prohibited, and/or (2) allows for arbitrary and discriminatory enforcement.

21.    There was and is no conduct in which the Plaintiff engaged that is clearly proscribed (ie. not continue to be a resident) by what "continue to be a resident" means.

22.    The City Charter §4.02 is void for vagueness. Ordinary persons using ordinary common sense would not be notified that certain conduct, failure to to "continue to be resident", will put them at risk of removal from elected office.

23.    As it applies to the Plaintiff, the City Charter §4.02 is void for vagueness. The Plaintiff, using ordinary common sense, would not be notified that identifiable conduct, a failure "continue to be resident", will put him at risk of removal from elected office.

24.    The general laws of Ohio provide for the procedures or the method of conducting elections at Title 35 of the Ohio Revised Code.

25.    Ohio Revised Code §3503.02   has established "Residence determination rules". [Exhibit 4]

26.    The City Charter at §9.03 recites: "Absence of general laws. Whenever the general laws of Ohio do not provide for the procedures or the method of conducting elections or the nomination of officers, and this charter refers to the general laws, the Council shall, by ordinance or resolution, provide the necessary procedure to implement this Charter's provisions." [Exhibit 2]

27.    Because the general laws of Ohio provide for the procedures or the method of conducting elections at Title 35 of the Ohio Revised Code and establish "Residence determination rules", Title 35 of the Ohio Revised Code is the exclusive statutory regulator of all matters related to the election of the Defendant Nelsonville's elected representatives and officials.

28.    Ohio Revised Code §3503.02 has made mandatory the application of "Residence determination rules" reciting "All registrars and precinct election officials, in determining the residence of a person offering to register or vote, *shall* [emphasis added not in the original] be governed by the following rules:…" [Exhibit 4]

29.    The challenge of a qualified elector to vote is governed exclusively by Ohio Revised Code §3503.24. [Exhibit 5]

30.    Ohio Revised Code §3503.24 governs the challenge of a qualified elector to vote "(A)…with the reasons for the … challenge, shall be filed with the board in person or

by mail on a form prescribed by the secretary of state and shall be signed under penalty of election falsification." [Exhibit 5]. A challenge to what constitutes a qualified elector is exclusive to the Ohio Revised Code.

31. Because the State of Ohio has set forth the law governing elections, City Charter §4.02 is without legal authority to establish its own "Residence determination rules" or determine who is a "qualified elector".

32. Nelsonville City Council Defendants have violated the Plaintiff's due process rights by taking action against the Plaintiff to remove him from his elected position by unlawful enforcement of City Charter §4.02, instead of properly filing a challenge of the Plaintiff's qualifications with the Athens County Board of Elections.

33. The City Charter at §11.08 sets forth the notice requirements for the the removal of an official including a Council person for the Defendant City. [Exhibit 2]

34. On February 8, 2021, three days after the Plaintiff received his first notice charging him with violations of the City Charter and setting a hearing for 2-19-2021 pursuant to City Charter at §11.08, Plaintiff was unlawfully charged with a violation of R.C. §4511.38(A) Backing without Caution (MM) by Defendant Mount on a municipal building parking lot. Defendant Mount's issuance of the citation was without probable cause and done solely to intimidate the Plaintiff from defending his notice of removal.

35. Defendant Mount charged the Plaintiff with full knowledge that the conduct alleged to have occurred on a municipal parking lot is well established law that it is not conduct that is violative of the Ohio Revised Code.

36.     Defendant Mount acted with the approval of Defendant Chief of Police in issuing the citation to the Plaintiff.

37.     Because the Uniform Traffic Ticket charging a violation of R.C. §4511.38(A) Backing without Caution (MM) by Defendant Mount lacked the elements to constitute a violation of law, the Municipal Court dismissed the charge against the Plaintiff.[Exhibit 10]

38.     On February 12, 2021, Defendant City published a notice to the public "The City of Nelsonville, City Council will hold a virtual public hearing on Friday, February 19, 2021 at 7:00PM. The public hearing is being held to review, and accept evidence on council member Greg Smith, regarding section 11.08 of the Nelsonville City Charter." [Exhibit 3]

39.     The public notice recited nothing about a vote to be taken to remove the Plaintiff from office only that they would "…[R]eview, and accept evidence on council member Greg Smith, regarding section 11.08…"

40.     On February 19, 2021 Plaintiff and his legal counsel timely appeared for the public hearing.

41.     Prior to February 19, 2021 Plaintiff was provided no notice from the Defendant City or Defendants as to the identity of any witness against him.

42.     Prior to February 19, 2021 Plaintiff was provided no notice from the Defendant City or Defendants as to the identity or form of any evidence, including any statements against him.

43.    On February 19, 2021 a hearing was held before all the Defendants. The hearing was not under oath. Only one non-rebuttal fact witness, not disclosed in advance by Defendants, appeared. He did not testify under oath. Cross examination of this witness by Plaintiff's Counsel established that the witness had no reliable, probative or substantial evidence that was adverse to the Plaintiff.

44.    All other evidence presented by the Defendants on February 19, 2021 was by statements or video recordings not made under oath.

45.    Upon conclusion of the public hearing there was no open discussion of any of the evidence presented. The Defendants moved to go into executive session.

46.    Executive session is governed by Ohio Revised Code §122 (G) *et.seq.*

47.    Ohio Revised Code §122 (G)(1) recites :

    "(G) Except as provided in divisions (G)(8) and (J) of this section, the members of a public body may hold an executive session only after a majority of a quorum of the public body determines, by a roll call vote, to hold an executive session and only at a regular or special meeting for the sole purpose of the consideration of any of the following matters:
    (1) To consider the appointment, employment, dismissal, discipline, promotion, demotion, or compensation of a public employee or official, or the investigation of charges or complaints against a public employee, official, licensee, or regulated individual, unless the public employee, official, licensee, or regulated individual requests a public hearing. Except as otherwise provided by law, no public body shall hold an executive session for the discipline of an elected official for conduct related to the performance of the elected official's official duties or for the elected official's removal from office. If a public body holds an executive session pursuant to division (G)(1) of this section, the motion and vote to hold that executive session shall state which one or more of the approved purposes listed in division (G)(1) of this section are the purposes for which the executive session is to be held, but need not include the name of any person to be considered at the meeting.

48.    The Defendants' stated reason for the executive session by Council President Defendant Dunfee was for the sole reason to discuss the evidence against the Plaintiff.

49.   The discussion of the evidence was for the purpose of Plaintiff's removal.

50.   The discussion of the evidence for the purpose of Plaintiff's removal as an elected official in executive session violates Ohio revised Code §122 (G)(1).

51.   The procedure for holding a vote to remove a Council member of the Defendant City is governed by Nelsonville City Charter §11.08 B.

52.   Nelsonville City Charter §11.08 B. procedure for holding a removal vote for a Council member is strictly limited to "such person shall not vote on any matter during the removal procedures and shall not be counted in determining required majorities."

53.   Nelsonville City Charter §11.08 B. procedure for holding a removal vote does not suspend the right of the Plaintiff to attend an executive session to participate in any of the matters enumerated in Ohio Revised Code §122 (G)(1).

54.   Plaintiff had a right to participate, but not vote, in any lawful executive session pursuant to his First Amendment right of Free Speech, unalienable, and further secured by his elected office as inherent in the position of an elected official of a municipal corporation.

55.   Upon motion by Defendant Dunfee to go into executive session, an unidentified Defendant invited Attorney Garry Hunter, City Attorney,  into the session.

56.   Defendant Taylor seconded the Motion and added to the motion "All council members except for Greg". Excluding Plaintiff from the executive session was illegal.

57.   Ohio Revised Code §121.22 (G)(1) requires an "the motion and vote to hold that executive session shall state which one or more of the approved purposes listed in

division (G)(1) of this section are the purposes for which the executive session is to be held,…"

58.     Upon inquiry from the floor by Plaintiff's Counsel regarding the Motion for executive session "Is that to discuss the evidence?" the response by Defendant Dunfee was "Yes".

59.     Ohio Revised Code §121.22 (G)(1) prohibits an executive session "…[f]or conduct related to the performance of the elected official's official duties or for the elected official's removal from office."

60.     The Motion for the executive session did not state one or more of the approved purposes in division (G)(1) of R.C. §121.22.

61.     An executive session "… to discuss the evidence" violates Ohio Revised Code §121.22 (G)(1) by discussing "… conduct related to the performance of the elected official's official duties or for the elected official's removal from office."

62.     The Motion for executive session did not did not state one or more of the approved purposes in division (G)(1) of R.C. §121.22 and was held for the prohibited reason of discussing evidence for the elected official's removal from office.

63.     On February 19, 2021 after the Defendants moved for an executive session, Council President Defendant Dunfee directed the Defendant Chief Of Police to remove the Plaintiff "to the lobby" from Council Chambers out to the hallway and then to the lobby. Defendant Chief of Police repeated "to the lobby" and caused Officer John Doe #1, whose name is unknown but is discoverable, to force the Plaintiff from the hallway to the entry lobby of the municipal building wherein Council Chambers is located.

64. Defendant Chief of Police was in uniform and Officer John Doe #1, who was armed and in uniform at the time, forced Plaintiff from Council Chambers to the lobby. When Plaintiff attempted to stop in the hallway about 15 feet from Council Chambers, Officer John Doe #1 repeated "to the lobby" forcing Plaintiff further way from Council Chambers. Upon direction of Defendant Dunfee, acting under color of law, Defendant Chief of Police and Officer John Doe #1 acted under color of law to prevent Plaintiff from participating in the executive session to exercise his First Amendment Right of Free speech secured by the U.S. Constitution.

65. Council Chambers has a door. The lobby of of the municipal building wherein Council Chambers is located is also secured by a door isolating any sound of any discussion by the Council.

66. Plaintiff was kept from participating in the entire executive session February 19, 2021 lasting from 7:51 p.m. to 8:30 p.m. by being kept in the lobby under observation of Defendant Officer John Doe #1 standing in the hallway.

67. Upon return to open council at 8:30 p.m. Defendants moved to come out of executive session. [Exhibit 6 p.32]

68. Defendants made a motion for some inaudible action until the following Monday night, February 22, 2021, to have a written decision and vote [Exhibit 6].

69. There was no discussion of the charges or evidence after returning to open session on February 19, 2021.

70.     On February 22, 2021 Defendants voted unanimously to approve a previously written decision [Exhibit 11 ] removing Plaintiff from office without discussion of the evidence. [Exhibit 12 ]

71.     The written decision recited it is the decision of the Nelsonville City Council that there is sufficient and refuted evidence that Greg Smith resides at 238 Adams St., Nelsonville, Ohio as his voting residence with his wife, but that he does not reside there continuously, also residing in at 608 Elm St., Belpre, Ohio with his self-Identified girlfriend, Beth Tyson, and part time with his self-identified girlfriend the Tyson at 1690 Clark Hill Road, Waterford OH.

72.     There is no evidence of any kind by any document or testimony by the Plaintiff or Ms. Beth Tyson in any venue that she is the self-identified girlfriend of the Plaintiff.

73.     The written decision of the Defendant Council unconstitutionally restricts the fundamental rights of the Plaintiff and any other elected Council Member to vote and to travel.

74.     The right to travel is an "unconditional personal right," a right whose exercise may not be conditioned.

75.     The Plaintiff has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction.

76.     The decision of the Defendant Council in conjunction with enforcing §4.02 of the City charter creates a distinction between an elector running for and being elected to public office and electors who vote for another elector as a candidate for office.

77. There is no substantial and compelling governmental interest of Nelsonville that requires a candidate,  or the Plaintiff as a candidate, subsequently  then elected to Council, to be more qualified as a resident than those qualified electors who vote for for the candidate.

78. The Nelsonville City Charter's durational residence requirement of a Council member classify bona fide residents on the basis of recent travel, penalizing those persons, and only those persons such as the Plaintiff, who have travelled from one jurisdiction to another during the qualifying period.  Thus, the durational residence requirement directly impinges on the exercise of a second fundamental personal right, the right to travel.

79. After being removed on February 22, 2021, Plaintiff subsequently timely appealed the decision to the Court of Common Pleas of Athens County.

80. On May 13, 2021 the Defendant City Council members held a special meeting of council and without any discussion or explanation, rescinded their vote of February 22, 2021 removing Plaintiff from office. Thereafter Plaintiff resumed his position as an elected council member.

81. On or about May 17, Defendants Dunfee and Sherman prepared another notice of removal for Plaintiff.

82. The notice recited, in part, "Dan Sherman (the "Charging Official") has reason to believe there is probable cause for your removal from office."…"[Y]ou have failed  to satisfy the the qualification requirements set forth in § 4.02 of the Charter… *Each member of Council shall continue to be a resident and qualified elector of the city*

*throughout his term of office, failing which Council shall remove him from office.* [Emphasis in the original]."[Exhibit 7]

83. The City Charter §4.02 is void for vagueness. Ordinary persons using ordinary common sense would not be notified that certain conduct, failure to what "continue to be resident" will put them at risk of removal from elected office.

84. As it applies to the Plaintiff, the City Charter §4.02 is void for vagueness. The Plaintiff, using ordinary common sense, would not be notified that certain conduct, a failure to to "continue to be resident", will put him at risk of removal from elected office.

85. The general laws of Ohio provide for the procedures and the method of conducting elections at Title 35 of the Ohio Revised Code.

86. Ohio Revised Code §3503.02  has established "Residence determination rules". [Exhibit 4]

87. The City Charter at §9.03 recites: "Absence of general laws. Whenever the general laws of Ohio do not provide for the procedures or the method of conducting elections or the nomination of officers, and this charter refers to the general laws, the Council shall, by ordinance or resolution, provide the necessary procedure to implement this Charter's provisions." [Exhibit 2]

88. Because the general laws of Ohio provide for the procedures or the method of conducting elections at Title 35 of the Ohio Revised Code and establish "Residence determination rules", Title 35 of the Ohio Revised Code is the exclusive statutory regulator of all matters related to the election of the Defendant Nelsonville's elected representatives and officials.

89. Ohio Revised Code §3503.02 has made mandatory the application of "Residence determination rules" reciting "All registrars and precinct election officials, in determining the residence of a person offering to register or vote, *shall* [emphasis added not in the original] be governed by the following rules:…" [Exhibit 4]

90. The challenge of a qualified elector to vote is governed exclusively by Ohio Revised Code §3503.24. [Exhibit 5]

91. The challenge of a qualified elector to vote "(A)…with the reasons for the … challenge, shall be filed with the board in person or by mail on a form prescribed by the secretary of state and shall be signed under penalty of election falsification." [Exhibit 5]

92. Further, Ohio Revised Code §3501.11 Board Duties mandates "Each board of elections shall exercise by a majority vote all powers granted to the board by Title XXXV of the Revised Code, shall perform all the duties imposed by law, and shall do all of the following:….(Q) Investigate and determine the residence qualifications of electors;…."

93. Because the State of Ohio has set forth the exclusive law governing elections and the residence qualifications of voters, City Charter §4.02 is without legal authority to establish its own "Residence determination rules" or determine who is a qualified elector.

94. Nelsonville City Council Defendants have violated the Plaintiff's due process rights by failing to properly file a challenge of the Plaintiff's qualifications with the Athens County Board of Elections and by taking action against the Plaintiff to remove him from his elected position by unlawful enforcement of City Charter §4.02 in their notice of May 17, 2021.

95.    The hearing set for Plaintiff's removal on May 24, 2021 was re-noticed to occur on June 2, 2021.

96.    On May 21, 2021 Plaintiff requested a public hearing. [Exhibit 8]

97.    Pursuant to Charter §11.08(B) "If a public hearing is demanded, a notice of such hearing shall be published in one or more newspapers of general circulation in the City at least one (1) week in advance of the hearing, and in such an event, the Charging Official may reschedule the time, date in place of the hearing to accommodate the publication of the notice." [Exhibit 2]

98.    Defendant City Council members failed to publish the mandatory notice required by section §11.08(B) of the Charter. [Exhibit 2]   Defendant City Council members proceeded with the hearing notwithstanding their failure to publish the notice.

99.    Nelsonville City Counsel has the power of subpoenae pursuant to Charter §11.08(E). [Exhibit 2]

100.   Plaintiff's Counsel served two requests for subpoenae of witnesses to appear at hearing of Plaintiff's matter. The requests were ignored and no witnesses were ever subpoenaed by the Defendant members of Council to appear to give testimony for the Plaintiff.

101.   Charter §11.08(F) mandates either the County Prosecutor or his designee prosecute removal proceedings. If the County Prosecutor refuses it is mandatory that City Council appoint a special prosecutor to prosecute the removal proceedings.

102. At the hearing of February 19, 2021, City Council failed to have County Prosecutor or his designee prosecute removal proceedings. At the hearing of February 19,2021, City Council failed to have a special prosecutor prosecute the removal proceedings.

103. At the second removal hearing originally set for May 24 and then reset for June 2, 2021 to remove the Plaintiff, City Council also noticed a meeting to vote on Resolution 2243 to appoint the law firm of Reminger Co., L.P.A. as special prosecutor.

104. Resolution 2243 did not waive the rules requiring such resolution to be read a second time in order to be effective as legislation passed by City Council.

105. Resolution 2243, by being passed without waiving the rules requiring a second reading, failed to lawfully appoint Reminger Co., L.P.A. as special prosecutor.

106. On June 1, 2021 Council members published a public notice of a special meeting to remove Plaintiff from office set for June 2, 2021.

107. On June 2, 2021 Council members had a hearing for the removal of the Plaintiff from his elected position with Reminger Co., L.P.A. as special prosecutor.

108. When Defendant Dunfee called for a discussion of the evidence, none of the 21 exhibits introduced by the Plaintiff were discussed. The sole articulation by any Defendant about the 6 exhibits of Defendants' evidence was by Defendant Sherman. His entire statement was "I believe the evidence has proved what it needed to prove."

109. On June 2, 2021 Council members voted to remove Plaintiff from his position.

110. On June 7, 2021 the Defendant Council members held another specially noticed Council meeting. Without any discussion of the reason or cause, and reciting they had reconsidered their decision, they rescinded their vote to remove the Plaintiff. It is

unlawful to reconsider their reasons outside of an open council meeting. An open council meeting did not occur in the interim from June 2, 2021 to June 7, 2021.

111. Nelsonville City Charter at §11.08 F. provides that "If a person accused is not finally removed, the City shall pay the reasonable costs of the defense of such persons and any compensation withheld pending the appeal of the action of the Council." [Exhibit 2]

112. Plaintiff was twice not finally removed because Defendant Council members voted to rescind their removal vote.

113. Nelsonville City Charter at §11.08 F creates a contractual obligation for the City to pay pay the reasonable costs of the defense of such persons and any compensation withheld when the Plaintiff was not finally removed because of their recission of their votes.

114. Plaintiff has thrice requested payment of reasonable costs of the defense directed to Defendant Council members and their legal Counsel, Reminger Co., L.P.A and twice to the City Auditor. These written requests along with submission of the billing [Exhibit 13 and Exhibit 14] have elicited no response from any Defendant, City or their Counsel to date. Defendant City of Nelsonville owes Plaintiff $19,253.40 as reasonable costs of the defense.

**Count 1. The Nelsonville, Ohio City Charter §4.02 violates the Equal Protection Clause of 14th Amendment of the United States Constitution made applicable to the States by 42 U.S.C. §1983.**

115. Plaintiff realleges Paragraphs 1 through 103 as if rewritten herein.

116. The City Charter §4.02 of Nelsonville, Ohio prohibits an elector from serving as an elected council member unless the member "continue(s) to be a resident and a qualified elector of the City throughout his term of office, failing which the Council shall remove him from office."

117. The City Charter §4.02 of Nelsonville Ohio is punitive in nature mandating the removal of elected council member under its stated conditions.

118. The City Charter does not define the phrase "continue to be resident" in particular the word "continue".

119. The City Charter §4.02 violates due process because (1) fails to inform ordinary people what conduct is prohibited, and/or (2) allows for arbitrary and discriminatory enforcement.

120. As it applies to the Plaintiff, the City Charter §4.02 is void for vagueness. The Plaintiff, using ordinary common sense, would not be notified that certain undefined conduct, a failure "continue to be resident", puts him at risk of removal from elected office.

121. As a result, the Plaintiff has suffered injury.

122. Plaintiff states a cause of action for a violation of the Equal Protection Clause of 14th Amendment of the United States Constitution made applicable to the States by 42 U.S.C. §1983.

**Count 2. Nelsonville, Ohio City Charter §4.02 is pre-empted by Ohio law regarding the investigation of and determination of residency qualifications requirements of electors and its enforcement against the Plaintiff violates his procedural due process rights under Equal Protection Clause of 14th Amendment of the United States Constitution made applicable to the States by 42 U.S.C. §1983.**

123. Plaintiff realleges Paragraphs 1 through 111 as if rewritten herein.

124. Ohio Revised Code §3501.11 Board Duties mandates "Each board of elections shall exercise by a majority vote all powers granted to the board by Title XXXV of the Revised Code, shall perform all the duties imposed by law, and shall do all of the following:....(Q) Investigate and determine the residence qualifications of electors;...."

125. Because the State of Ohio has set forth the law governing elections and the residence qualifications of voters, City Charter §4.02 is without legal authority to establish its own "Residence determination rules" or determine who is a qualified elector.

126. Nelsonville City Council Defendants have violated the Plaintiff's due process rights by by taking action against the Plaintiff to remove him from his elected position by unlawful enforcement of City Charter §4.02 in their notices of removal on February 5 and May 17, 2021.[Exhibits 1 and 7] and failing to properly file a challenge of the Plaintiff's qualifications with the Athens County Board of Elections.

127. As a result the Plaintiff has suffered injury.

128. Plaintiff states a cause of action for a violation of the Equal Protection Clause of 14th Amendment of the United States Constitution made applicable to the States by 42 U.S.C. §1983.

**Count 3. Malicious prosecution in violation of the Fourth Amendment made applicable to the States by the Fourteenth Amendment and 42 U.S.C. §1983.**

129. Plaintiff realleges Paragraphs 1 through 117 as if rewritten herein.

130. Plaintiff has the right to equal protection and due process under the Fourth Amendment made applicable to the States by the Fourteenth Amendment and 42 U.S.C. §1983 to be free from unlawful prosecution.

131.    On February 8, 2021, three days after the Plaintiff received his first notice charging

him with violations of the City Charter and setting a hearing for 2-19-2021 pursuant

to City Charter at §11.08, Plaintiff was charged with a violation of R.C. §4511.38(A)

Backing without Caution (MM) by Defendant Mount on a municipal building parking

lot. Plaintiff was detained without Probable Cause or Reasonable Articulable

Suspicion. The minimum standard for detaining a person, however limited, is for

Reasonable Articulable Suspicion. As it is well established that Plaintiff was only

required to comply with ORC 4549.021 in this situation and ORC §4511.38(A) is not

applicable on non-roadways, where this occurred in a parking lot, the detainment

even without the traffic citation violated Plaintiff's 4th Amendment right to be free

from unreasonable search and seizure. The traffic citation exacerbated the unlawful

seizure even further (costing both time, money, and adding public ridicule.) This was

all done despite the fact that Plaintiff made Defendant Mount aware of the illegality

of being ordered not to leave.

132.    Despite the fact that Defendant Police Officer Mount had full knowledge that the

conduct occurred on a municipal parking lot is well established law that it is not

conduct that is violative of the Ohio Revised Code, Officer Mount continued to detain

the Plaintiff without probable cause.

133.    Defendant Chief of Police Scott Fitch approved and ratified the issuance of a violation

of R.C. §4511.38(A) Backing without Caution (MM) by Defendant Mount. Defendant

Chief of Police Scott Fitch had full knowledge that the conduct that occurred on a

municipal parking lot is well established law that it is not conduct that is violative of the Ohio Revised Code.

134. Neither Defendant Mount nor Defendant Fitch had probable cause to believe a violation of R.C. §4511.38(A) Backing without Caution (MM) had been committed by Plaintiff.

135. Defendants Mount and Fitch initiated and continued the prosecution of the Plaintiff without probable cause with malice. Defendants Mount and Fitch made, influenced, or participated in the decision to criminally prosecute the plaintiff.

136. The prosecution of the case in the Athens County Municipal Court case number 2021TRD000574 was dismissed April 19, 2021 by Judge Grace in favor of the Plaintiff with costs to the State.[Exhibit 10]

137. As a result, the Plaintiff has suffered injury.

138. Plaintiff states a cause of action for Malicious Prosecution in violation of the Fourth Amendment made applicable to the States by the Fourteenth Amendment and 42 U.S.C. §1983.

**Count 4. False Imprisonment in violation of the Fourth Amendment made applicable to the States by the Fourteenth Amendment and 42 U.S.C. §1983.**

139. Plaintiff realleges Paragraphs 1 through 128 as if rewritten herein.

140. Plaintiff has the right to equal protection and due process under the Fourth Amendment made applicable to the States by the Fourteenth Amendment and 42 U.S.C. §1983 to be free from unlawful imprisonment.

141. On February 8, 2021 Defendant Police Officer Mount investigated a collision between two vehicles on a parking lot at 211 Lake Hope Drive Nelsonville, Ohio 45764.

142.   211 Lake Hope Drive Nelsonville, Ohio 45764 is an area not subject to the jurisdiction of the Nelsonville Police Department for the purpose of issuing traffic citations.

143.   Upon being informed that the collision took place on a parking lot at 211 Lake Hope Drive Nelsonville, Ohio 45764 Defendant Police Officer Mount continued to intentionally detain and confine Plaintiff on a parking lot at 211 Lake Hope Drive Nelsonville, Ohio 45764 without lawful privilege and against his consent within a limited area for an appreciable time.

144.   Upon information and belief, Defendant Chief of Police Scott Fitch approved and ratified the conduct of Officer Mount as it was occurring, conferring with Officer Mount by telephone.

145.   As a result, Plaintiff suffered injury.

146.   Plaintiff states a cause of action for False Imprisonment in violation of the Fourth Amendment made applicable to the States by the Fourteenth Amendment and 42 U.S.C. §1983.

**Count 5. Violation of the First Amendment of the United States Constitution, Freedom of Speech made applicable to the States by the Fourteenth Amendment and 42 U.S.C. §1983.**

147.   Plaintiff realleges Paragraphs 1 through 134 as if rewritten herein.

148.   Plaintiff has the right to equal protection and due process under the First Amendment made applicable to the States by the Fourteenth Amendment and 42 U.S.C. §1983 to be free to engage in free speech.

149. On February 19, 2021, after the public hearing by Defendant City Council members, there was no open discussion of any of the evidence just presented. The Defendants then moved to go into executive session.

150. Executive session is governed by Ohio Revised Code §122 (G) *et.seq.*

151. The Defendants' stated reason for the executive session by Council President Defendant Dunfee was for the sole reason to discuss the evidence against the Plaintiff. [Exhibit 6 p.30]

152. The discussion of the evidence was for the purpose of Plaintiff's removal.

153. The discussion of the evidence for the purpose of Plaintiff's removal as an elected official in executive session violated Ohio revised Code §122 (G)(1).

154. The procedure for holding a vote to remove a public official of the Defendant City is governed by Nelsonville City Charter §11.08 B.

155. Nelsonville City Charter §11.08 B. procedure for holding a removal vote is strictly limited to "such person shall not vote on any matter during the removal procedures and shall not be counted in determining required majorities."

156. Nelsonville City Charter §11.08 B. procedure for holding a removal vote does not suspend the right of the Plaintiff to attend an executive session to participate in any of the matters enumerated in Ohio Revised Code §122 (G)(1).

157. Plaintiff had a right to participate in any lawful executive session pursuant to his First Amendment right of Free Speech, unalienable, and further secured by his elected office as inherent in the position of an elected official of a democratic republic.

158.    Upon motion by Defendant Dunfee to go into executive session, an unidentified Defendant invited Attorney Garry Hunter, City Attorney, into the session.

159.    Defendant Taylor seconded the Motion and added to the Motion "All council members except for Greg".

160.    Council President Defendant Dunfee directed the Defendant Chief Of Police to remove the Plaintiff "to the lobby" from Council Chambers out to the hallway and then to the lobby. Defendant Chief of Police repeated "to the lobby" and caused Officer John Doe #1, whose name is unknown but is discoverable, to force the Plaintiff from the hallway to the entry lobby of the municipal building wherein Council Chambers is located.

161.    Defendant Chief of Police was in uniform and Officer John Doe #1, who was armed and in uniform at the time, forced Plaintiff from Council Chambers to the lobby. Acting upon the order of Defendant Dunfee, acting under color of law, when Plaintiff attempted to stop in the hallway about 15 feet from Council Chambers, Officer John Doe #1 repeated "to the lobby" forcing Plaintiff further way from Council Chambers.

162.    Plaintiff, as an elected member of City Council, had a right to attend and speak in the executive session as a member of Nelsonville City Council. Defendant Council members, Defendant Chief of Police and Officer John Doe #1 acted under color of law to prevent Plaintiff from participating in the executive session and to exercise his First Amendment Right of Free speech secured by the U.S. Constitution.

163. Plaintiff was kept from participating in the entire executive session February 19, 2021 lasting from 7:51 p.m. to 8:30 p.m. by being kept in the lobby under observation of armed police officer Defendant Officer John Doe #1 standing in the hallway.

164. As a result, the Plaintiff has suffered irreparable injury.

165. Plaintiff states a cause of action for Violation of the First Amendment of the United States Constitution, Freedom of Speech made applicable to the states by the Fourteenth Amendment and 42 U.S.C. §1983.

**Count 6. Violation of the Equal Protection Clause of the the Fourteenth Amendment of the United States Constitution.**

166. Plaintiff realleges Paragraphs 1 through 161 as if rewritten herein.

167. Nelsonville's durational residence requirements of the City Charter of Nelsonville classify bona fide resident electors on the basis of recent travel, penalizing those persons, and only those persons, who have gone from one jurisdiction to another during the qualifying period. Thus, the durational residence requirement directly impinges on the exercise of a second fundamental personal right, the right to travel.

168. Defendant Council Members have stated in their decision of February 22, 2021 that Plaintiff is a qualified elector of Nelsonville [Exhibit 11 P.1 *supra*]

169. Plaintiff has the right to travel.

170. The right to travel is an "unconditional personal right," a right whose exercise may not be conditioned.

171. There is no compelling governmental interest to burden the right to travel of a qualified elected elector with a durational residence requirement in a manner different from an unelected qualified elector.

172.    Additionally, the City Charter of Nelsonville is totally devoid of any quantitative definition of what period of time, if any, would support excluding the Plaintiff from elected service and is necessary to promote a compelling state interest.

173.    As a result, Plaintiff suffered injury.

174.    Plaintiff states a cause of action for violation of the Fourteenth Amendment Equal Protection clause.

**Count 7. Breach of contract.**

175.    Plaintiff realleges Paragraphs 1 through 161 as if rewritten herein.

176.    Nelsonville City Charter at §11.08 F. provides that "If a person accused is not finally removed, the City shall pay the reasonable costs of the defense of such persons and any compensation withheld pending the appeal of the action of the Council." [Exhibit 2]

177.    Plaintiff was twice not finally removed because Defendant Council members voted to rescind their removal vote.

178.    Nelsonville City Charter at §11.08 F creates a contractual obligation for the City to pay pay the reasonable costs of the defense of such persons and any compensation withheld when the Plaintiff was not finally removed because of their recission of their votes.

179.    Plaintiff has completed all conditions precedent to be paid reasonable costs of the defense.

180.    Plaintiff has thrice requested payment of reasonable costs of the defense directed to Defendant Council members and their legal Counsel, Reminger Co., L.P.A and twice

to the City Auditor. These written requests along with submission of the billing [Exhibit 13 and Exhibit 14] have elicited no response from any Defendant, City Auditor or their Counsel to date. Defendant City of Nelsonville owes Plaintiff $19,253.40 as reasonable costs of the defense.

181. As a result of Defendant City and Council's breach, Plaintiff suffered injury.

182. Plaintiff states a claim for breach of contract.

**WHEREFORE,** the Plaintiff prays for judgment against the Defendants and other relief as follows:

183. Judgment in the form of an order declaring the City Charter §4.02 of Nelsonville, Ohio to be void for vagueness and unconstitutional both facially and in its application to Plaintiff and others similarly situated;

184. Judgment in the form of an order declaring the City Charter §4.02 of Nelsonville, Ohio is pre-empted as to any residency qualifications by Ohio Revised Code Title 35;

185. Judgment against Defendants Fitch and Mount for Counts 3 and 4;

186. Judgment against Defendant City Council Members, Officer John Doe #1 and Defendant Fitch for violations of Count 5;

187. Judgment for punitive damages for Plaintiff against all Defendants jointly and severally where applicable;

188. Judgment for compensatory damages for Plaintiff against all Defendants jointly and severally where applicable;

189. Attorney's fees;

190. Costs of this action;

191. Injunctive relief in the form of an order to prohibit the Defendant Council Defendants from bringing any action against any Council member under City Charter §4.02 as it is currently worded;

192. $19,253.40 as reasonable costs of the defense of his removals and;

193. Any other relief the Court deems to be fair and remedial.

## <u>VERIFICATION</u>

I, Greg Smith am the Complainant in the above Complaint and hereby make this statement under oath.

1) I have reviewed the Complaint in its entirety;
2) I know and believe that all allegations that I have personal knowledge of to be true;
3) I believe the allegations that I do not have personal knowledge of to be true are based on specified information, documents, or both, as attached to and recited herein.

Sworn to and subscribed in my presence this ___4___ day of ___July___, 2021

_Rhonda Holmes_
Notary Public

_Greg Smith_
Gregory Smith, Complainant

RHONDA HOLMES
Notary Public
State of Ohio
My Comm. Expires
December 8, 2025

Com Expires 12-8-2025

Respectfully submitted,
s/ Daniel H. Klos

Daniel H. Klos (0031294)
4591 Indianola Avenue
Columbus, Ohio 43214
Voice (614 261-9581
Fax (614 262-5732
Email klosdhesq@aol.com
Attorney for Plaintiff

**JURY DEMAND**

Plaintiff hereby demands a trial by jury for all matters triable to a jury.

Respectfully submitted,

*s/ Daniel H. Klos*

Daniel H. Klos (0031294)
4591 Indianola Avenue
Columbus, Ohio 43214
Voice (614 261-9581
Fax (614 262-5732
Email klosdhesq@aol.com
Attorney for Plaintiff
